**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **BROADCAST MUSIC, INC., et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **V.** ) | **Case No. 4:14CV1647 NCC** |
| ) | |
| **KEN V, INC., d/b/a KENNY'S** ) | |
| **BAR & GRILL and** ) | |
| **KEN VAUGHN,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

This matter is before the court pursuant to Plaintiffs' Motion for Summary

Judgment. (Doc. 45). Defendants have filed a Memorandum of Law in

Opposition to Plaintiffs' Motion for Summary Judgment. (Doc. 52). Plaintiffs

have filed a Reply. (Doc. 53). Also before the court is Plaintiffs' Motion to Strike

and Exclude, in part, the Affidavit of Defendant Ken Vaughn. (Doc. 54). The

parties have consented to the jurisdiction of the undersigned United States

Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 35).

## I.
## BACKGROUND and UNDISPUTED FACTS[1]

This is an action for copyright infringement brought by Plaintiffs Broadcast

Music, Inc. and individual copyright owners (collectively referred to as BMI)

---

[1] The facts are undisputed unless otherwise stated.

pursuant to 17 U.S.C. §§ 101 et. seq. (the Copyright Act), against Defendants Ken V Inc., d/b/a Kenny's Bar & Grill, and Ken Vaughn. Plaintiffs allege twelve claims of willful copyright infringement based upon Defendants' unauthorized performances of musical compositions from the BMI copyrighted repertoire at Kenny's Bar & Grill in Barnhart, Missouri. Plaintiffs assert that the specific acts of copyright infringement alleged in the Complaint have caused them great and incalculable damage and, that by continuing to provide unauthorized public performances of works in the BMI repertoire, Defendants threaten to continue committing copyright infringement. Plaintiffs ask the court to enjoin Defendants from infringing and ask for statutory damages, reasonable attorney's fees, and costs. (Doc. 1).

BMI is a performing rights society which acquires non-exclusive public performance rights from copyright owners, including music publishing companies and independent composers. The other named Plaintiffs are the copyright owners of the musical compositions which are the subject of this action. Through agreements with copyright owners, BMI has acquired non-exclusive public performance rights from each of the other Plaintiffs in this cause of action.

Ken V, Inc., owns and operates Kenny's Bar & Grill in Barnhart, Missouri, and Ken Vaughn is the sole owner of Ken V, Inc. Kenny's Bar & Grill regularly features performances of live and recorded music. To the extent Plaintiffs contend

that Defendant Ken Vaughn operates Kenny's Bar & Grill, Defendants deny that Ken Vaughn operates that establishment, given that many aspects of its operation are handled by others. (Doc. 47 (Plaintiffs' Statement of Undisputed Facts (PSUF)) ¶ 10; Doc. 51 (Def. Resp. to PSUF) ¶ 10).

Plaintiffs contend that between February 2012 and November 2013, BMI repeatedly informed Defendants of the need to obtain permission for public performances of copyrighted music, and that BMI offered to enter into a license agreement. (Doc. 47 ¶¶ 12-13). Specifically, among other things, Plaintiffs submitted letters from BMI to Vaughn, dated February 15, April 2, May 16, June 15, July 30, September 13, and October 12 and 31, 2012, in which letters BMI offered to grant Defendants a license for songs from the BMI repertoire and/or explained federal copyright law. (Doc. 47-9 at 1-9). Plaintiffs have additionally submitted a December 3, 2012 letter, addressed to Vaughn, in which letter BMI stated that the public performance of BMI music without the proper authorization constituted copyright infringement and that such infringement might result in damages under federal copyright law. (Doc. 47-9 at 10). Plaintiffs have also submitted Cease and Desist Notices, dated December 27, 2012, and January 11, 2013, addressed to Vaughn, along with FedEx receipts, indicating their delivery. (Doc. 47-9 at 12, 14). Further, Plaintiffs have submitted letters, dated January 14 and 18, April 18, May 1, June 14 and 26, August 26, and October 10 and 24, 2013,

addressed to Vaughn regarding licensing BMI music, copyright infringement by Defendants, and the cease and desist notices sent by BMI. (Doc. 47-9 at 18-26). As set forth below, BMI's records reflect that BMI sent a representative to Kenny's Bar & Grill on one occasion, October 12, 2013, and, on 75 occasions, made telephone calls during which BMI's licensing personnel spoke to persons associated with the operation of Kenny's Bar & Grill. (Doc. 47-7, ¶ 7).

On the evening of October 12, 2013, and the early morning of October 13, 2013, a BMI investigator made recordings, at Kenny's Bar & Grill, of public performances of twelve songs which are BMI-licensed music; at those times, Kenny's Bar & Grill was open to the public; at those times Defendants operated and maintained Kenny's Bar & Grill, had a direct financial interest in it and had the right and ability to direct, control, and or supervise the activities of Kenny's Bar & Grill[2]; at those times, musical compositions were publicly performed at Kenny's Bar & Grill; and, at those times, Defendants were not licensed by any of the Plaintiffs to publicly perform any of their musical compositions. (Doc. 47 ¶¶ 15-20; Doc. 51 ¶¶ 15-20).

Plaintiffs have provided a FedEx receipt for a letter dated November 13, 2013, addressed to Vaughn, from a representative of BMI, which letter notified

---

[2]Vaughn admits that, at the time of the alleged infringement, he operated and maintained and had the right to control the activities of Kenny's Bar & Grill, although he also states that he was not the sole operator of Kenny's Bar & Grill, as others handled many aspects of its operation. (Doc. 51 ¶¶ 16-17).

Vaughn that infringement of BMI-licensed music recently occurred at his establishment; that BMI "remain[ed] ready to furnish [Vaughn] with the necessary license; and that, in order to resolve the matter, Vaughn should sign the attached License Agreement, and pay the appropriate license fees and BMI's music researcher costs. The letter stated that the license fee for February 1, 2012, through January 31, 2013, was $2,790; that the license fee for February 1, 2013, through February 31, 2014, was $2,880; and that the music researcher costs were $218.70, for a total of $5,888.70. (Doc. 47-9 at 29).

Defendants do not deny that Plaintiffs sent the above described letters and notices. Moreover, Vaughn has no evidence to controvert that these communications from Plaintiffs were received by Defendants. (Doc. 47-12, ¶¶ 44-69). Vaughn, however, in his affidavit, attests to the fact that he never received letters or phone calls from BMI notifying him of the need to obtain permission for public performances of copyrighted materials; that he did not receive any notices from BMI to cease and desist from playing music licensed by BMI; that he did not know, until the commencement of this litigation, that Ken V, Inc., needed to have a license for a band to perform non-original music or have a D. J. play such music; and that, "while [he] gave it almost no thought," prior to the commencement of this litigation, he "believed that it was the responsibility of the band or D. J. to obtain permission to play" licensed music. (Doc. 51-1 (Vaughn Aff.) ¶¶ 5-7, 10).

Vaughn does not address Plaintiffs' claim that they sent a representative to Kenny's Bar & Grill.

Additionally, Vaughn has attested that, on or about October 13, 2013, when the band Hush played the music which is the subject matter of this case, at Kenny's Bar & Grill, Defendants received no money from the audience other than what they received from the food and drink that was served that night, and that he intends to obtain a BMI license and will refrain from playing BMI-licensed songs until he obtains a license. (Doc. 51-1 ¶¶ 8, 11).

## II.
## MOTION TO STRIKE

In their Motion to Strike and Exclude, in part, Vaughn's Affidavit, Plaintiffs ask the court to strike the portions of Vaughn's affidavit in which he addresses the scope and breadth of his operation of Kenny's Bar & Grill on the grounds that Defendants failed to respond to discovery requests which addressed this issue. Plaintiffs also seek to strike Vaughn's attestation that he did not receive the twenty-six (26) letters sent by Plaintiffs on the ground that Vaughn's attestation contradicts his sworn responses to discovery that "they did not have evidence controverting that they did receive each of the 26 letters." (Doc. 54 at 1-2; Doc. 47-12, ¶¶ 44-69).

As for the scope and breadth of Vaughn's role in the operation of Kenny's Bar & Grill, as discussed below, Defendants acknowledge that Vaughn meets the

criteria for liability for copyright infringement. As such, the extent of Vaughn's role in the operation of Kenny's Bar & Grill, beyond this requirement, is not outcome determinative. As for Vaughn's attestations addressing his receipt of Plaintiffs' letters, notices, telephone calls, and/or a visit by a BMI representative, Vaughn's affidavit is not inconsistent with Defendants' position. As discussed above, Defendants take the position that they have no evidence to contradict that Defendants received the letters; Vaughn merely attests that he never received them and he has no knowledge of them. (Doc. 51 ¶¶ 12-14; Doc. 51-1 ¶¶ 6-7). As such, the court will deny Plaintiffs' Motion to Strike.

### III.
### STANDARD FOR SUMMARY JUDGMENT

The court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). <u>See also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. <u>AgriStor Leasing v. Farrow</u>, 826 F.2d 732, 734 (8th Cir. 1987). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

(1986).  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.  See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion.  Celotex, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247.  The nonmoving party may not rest upon mere allegations or denials of his pleading.  Anderson, 477 U.S. at 256.  "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment.  Id. at 248.  Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  See Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

Where the non-moving party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).  When reviewing the

record in connection with a pending motion for summary judgment, the court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute. However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

## IV.
## DISCUSSION

### A.  Copyright Infringement

To establish a prima facie case for infringement of copyright in musical compositions, a plaintiff must prove the following five elements:

(1) the originality and authorship of the compositions involved;

(2) compliance with all formalities required to secure a copyright under Title 17, United States Code;

(3) that plaintiffs are the proprietors of the copyrights of the compositions involved in th[e] action;

(4) that the compositions were performed publicly for profit [by the defendants]; and

(5) that the defendants had not yet received permission from any of the plaintiffs or their representatives for such performances.

Lorimar Music A Corp. v. Black Iron Grill Co., 2010 WL 3022962, at *2–3 (W.D. Mo. July 29, 2010) (citing Collins Court Music, Inc. v. Pulley, 704 F. Supp. 963, 964 (W.D. Mo. 1988)).

"A prima facie case as to the first three elements may be made by submitting certified copies of copyright registration certificates and any subsequent assignments." Collins Court Music, 704 F. Supp. at 964 (citations omitted). In support of their Motion for Summary Judgment, Plaintiffs have submitted copies of the copyright registration certificates for each composition at issue, as well as any subsequent assignments and other documents which indicate copyright ownership. (Docs. 47-2 through 47-6). With this evidence, for the purpose of summary judgment, Plaintiffs have satisfied the first three elements of the five-element test to establish infringement of copyright of musical compositions. Lorimar Music, 2010 WL 3022962, at *3 (citing Cross Keys Pub. Co., Inc. v. LL Bar T Land & Cattle Co., Inc., 887 F. Supp. 219, 222 (E.D. Mo. 1995) (certified copies of copyright registration certificates for each of the songs at issue established validity of plaintiffs' copyrights).

Further, Plaintiffs have established the fourth element, public performance, as Defendants admit that the musical compositions were performed at Kenny's Bar & Grill as alleged by Plaintiffs. Moreover, Plaintiffs have provided a Certified Infringement Report which states that the songs at issue were played at Kenny's Bar & Grill on or about October 12, 2013. (Doc. 47-8).

As for the fifth and last element of copyright infringement—the alleged infringer had not yet received permission to play the copyrighted music—it is

undisputed that, at the time BMI licensed music was performed at Kenny's Bar & Grill, on October 12 and 13, 2013, Defendants did not have a license from BMI. See Collins, 704 F. Supp. at 965 ("To legally publicly perform copyrighted musical material one must either obtain permission to do so from the owner(s) of the copyrights or from the owner's representatives."). Indeed, Defendants do not deny that, for purposes of summary judgment, Plaintiffs have established copyright infringement. (Doc. 52 at 3) ("In the case at bar, [] Defendants do not deny that they infringed on [] Plaintiffs' copyright nor do they deny that they are both liable for the infringement."). As such, the court finds that the undisputed facts establish a prima facie case of copyright infringement.

**B.     Liability of Defendants:**

"Copyright infringement is in the nature of a tort, and all who participate in the infringement are jointly and severally liable." Cross Keys Pub. Co. v. LL Bar T Land & Cattle Co., Inc., 887 F. Supp. 219, 222 (E.D. Mo. 1995). Vicarious liability for copyright infringement exists where a defendant has (1) "[t]he right and ability to supervise the infringing activity"; and (2) "[a]n obvious and direct financial interest in exploitation of copyrighted materials." RCA/Ariola Intern., Inc. v. Thomas & Grayston Co., 845 F.2d 773, 781 (8th Cir. 1988)).

Not only is a corporate defendant liable for infringement where the above described two-pronged test for liability is met, see Broadcast Music, Inc. v. Niro's

Palace, Inc., 619 F. Supp. 958, 961 (N.D. Ill. 1985) ("[N]ot only is the performer liable for infringement, but so is anyone who sponsors the performance."), but individual owners of the corporate defendant are likewise liable under such circumstances, see RCA/Ariola, 845 F.2d at 782 ("McCann's financial interest in the infringements follows directly from Metacom's, since McCann is a fifty percent shareholder in Metacom.").  See also Shapiro, Bernstein & Co. v. H.L. Green Co., Inc., 316 F.2d 304, 307 (2nd Cir. 1963) ("[T]he cases are legion which hold the dance hall proprietor liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income.  He is liable whether the bandleader is considered, as a technical matter, an employee or an independent contractor, and whether or not the proprietor has knowledge of the compositions to be played or any control over their selection.").

"Defendants do not deny that they infringed on the Plaintiffs' copyright nor do they deny that they are both liable for the infringement."  (Doc. 52 at 3).  The court finds, therefore, that the undisputed facts establish that both Vaughn and Ken V, Inc., had the requisite control and financial interest to make them liable for the infringing activities alleged in Plaintiffs' Complaint.  See Cross Keys, 887 F. Supp. at 223 (finding defendant corporation liable for infringing performances where defendants admitted in their answer that the corporation owned and operated the

saloon, and finding individuals liable for infringement where they participated in management of the establishment and derived financial benefit from the establishment).

## C. Injunctive Relief:

Plaintiffs also ask that Defendants be enjoined from further infringing, in any manner, the copyrighted musical compositions licensed by BMI. (Doc. 46 at 5-6). As stated by the court, in <u>Cross Keys</u>, 887 F. Supp. at 223:

> Pursuant to 17 U.S.C. § 502(a), the Court "may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Once liability is established, courts will grant permanent injunctions if there is a substantial likelihood of future infringements. <u>Marvin Music Co. v. BHC Ltd. Partnership</u>, 830 F. Supp. 651, 655 (D. Mass. 1993).

Even where the defendants have secured a license after the time of the infringements, injunctive relief is warranted where the history of the defendants' actions was "chronicled in the pleadings" and the defendants' conduct exhibited a "tendency conveniently to ignore" the plaintiffs' proprietary rights. <u>Milene Music, Inc. v. Gotauco</u>, 551 F. Supp. 1288, 1295-96 (D. R.I. 1982). Further, "[w]hile it is true that a voluntary cessation of illegal conduct does not itself render the issue of injunctive relief moot, there must be 'some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" <u>Broadcast Music, Inc. v. Edcon Enter., LLC</u>, 2012 WL 3143925, at *5

(E.D. Mo. Aug. 1, 2012) (unpublished) (quoting <u>United States v. W.T. Grant Co.</u>, 345 U.S. 629, 633 (1953)).

In the instant matter, Defendants have indicated, in Vaughn's sworn affidavit, that they intend to obtain a license from BMI in order that compositions in the BMI repertoire may be performed at Kenny's Bar & Grill and that they will cease playing "such music until" they have purchased a license from BMI. (Doc. 51-1 ¶ 11). In their Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment, however, Defendants do not refute Plaintiffs arguments in support of their request for injunctive relief; nor address this issue. (Doc. 52). As such, the court finds the undisputed facts establish that there is a "substantial likelihood" that, in the future, Plaintiffs' copyrighted musical compositions will be performed, without authorization, at Kenny's Bar & Grill, in violation of the Copyright Act. <u>Cross Keys</u>, 887 F. Supp. at 223. Therefore, to the extent Plaintiffs seek summary judgment on the issue of whether they should be granted injunctive relief, the court finds that Plaintiff's Motion for Summary Judgment should be granted.

**D.    Statutory Damages:**

Under 17 U.S.C. § 504(c)(1), a "copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in [an] action, with respect to any one work, for which any

one infringer is liable individually . . . in a sum of not less than $750 or more than $30,000 as the court considers just."  See also Broadcast Music v. MWS, LCC, 2014 WL 2804396, at *1 (E.D. Mo. June 20, 2014).  "Within the statutory limits, the assessment of damages lies within a court's sound discretion and sense of justice."  Lorimar Music, 2010 WL 3022962, at *6 (internal citation omitted).  Plaintiffs have requested that statutory damages be awarded.  (Doc. 46 at 7-10).

As stated by this court:

> In awarding statutory damages, the court may consider the following factors:  (1) expenses saved by defendants in connection with the infringements; (2) revenues lost by plaintiffs; and (3) whether the infringement was willful and knowing or accidental and innocent.  Cross Keys Pub. Co., Inc. v. LL Bar T Land & Cattle Co., Inc., 887 F.Supp. 219, 224 (E.D. Mo. 1995).  Courts generally agree that statutory damages should exceed unpaid licensing fees to emphasize that "it costs less to obey the copyright laws than to violate them."  Id. (citing Music City Music v. Alfa Foods, Ltd., 616 F. Supp. 1001, 1003 (E.D. Va. 1985)).  "The court's award should be designed to compensate plaintiffs as well as to punish defendant[s]."  Prater Music v. Williams, 5 USPQ2d 1813, 1816 (W.D. Mo. 1987).  Another relevant factor is the size and nature of the defendant's business.  In Broadcast Music, Inc. v. DeGallo, Inc., 872 F. Supp. 167 (D.N.J. 1995), the district court observed that the Copyright Act "was designed to deal with infringers ranging from relatively small nightclubs, such as the one presented here, to large scale pirates, broadcasting across the country on electronic media.  With due allowance for the level of culpability involved, the penalty must be proportionate to the extent of the infringement."  Id. at 169.

MWS, LCC, 2014 WL 2804396, at *2.  See also Lorimar Music, 2010 WL 3022962, at *6.

As for willful infringement, 17 U.S.C. § 504(c) further provides:

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

For purposes of determining whether a defendant has acted willfully under 17 U.S.C. § 504(c), it is not necessary that knowledge of the infringement be proven directly. MWS, LCC, 2014 WL 2804396, at *3 (citing Knitwaves, Inc. v. Lollytogs Ltd., Inc., 71 F.3d 996, 1010 (2d Cir. 2005) (quoting N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992)). "Reckless disregard of the copyright holder's rights is sufficient to prove willfulness and may be inferred from the defendant's conduct." MWS, LCC, 2014 WL 2804396, at *3 (internal quotations and citations omitted). Indeed, proof of "willful blindness" to copyright holder's rights may be sufficient to show willfulness. Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263–64 (2d Cir. 2005).

According to the evidence of record, the license fee for Kenny's Bar & Grill for the period of February 1, 2012, through January 31, 2013, was $2,790, and the licensing fee for the period of February 1, 2013, through January 31, 2014 was $2,880. Additionally, the estimated license fees between February 2014 and

January 2015 would have been approximately $2,940. As of September 21, 2015, the annual licensing fee was approximately $2,970. (Mullaney Aff., ¶ 16; Doc. 47-9 at 27). Plaintiffs claim $11,580 total in lost licensing fees for this approximate three-year time period. Plaintiffs seek statutory damages in the amount of $36,000, which they state represents approximately three times the amount Plaintiffs would have received in licensing fees from Defendants had they purchased a license for the past three years. Plaintiffs further explain that statutory damages in the amount of $36,000 represent an award of $3,000 for each of the twelve infringements. (Doc. 46 at 9). Plaintiffs contend their request for $3,000 per infringement is reasonable, appropriate and consistent with damages awarded by other federal district courts in similar music-licensing cases.

Defendants respond that the court "should lean towards the lesser infringement amount of" $750 per infringement for a total of $9,000, given that there was no cover charge at Kenny's Bar & Grill on the dates of the infringements proven by Plaintiffs. (Doc. 52 at 4). As discussed above, a defendant's savings and profit connected to the infringements is just one consideration for the court to determine what is reasonable and appropriate. Here, Plaintiffs lost revenue, and another factor is whether there is evidence that Defendants acted willfully. 17 U.S.C. § 504(c). In this case, the court is mindful that Vaughn, who is the sole owner of Kenny's Bar & Grill, has sworn that he had no knowledge of the letters

or phone calls from BMI notifying him of the need to obtain permission for public performances of copyrighted materials; that he did not receive any notices from BMI to cease and desist from playing music licensed by BMI; and that he did not know, until the commencement of this litigation, that Ken V, Inc., needed to have a license for a band to perform non-original music or for a D.J. to play such music. (Doc. 51-1 ¶¶ 5-7, 10). Therefore, this case differs somewhat from the majority of cases cited by Plaintiffs with uncontroverted evidence of a defendant's knowledge of the infringement and deliberate indifference thereafter regarding the copyright holder's or BMI's effort to secure a licensing fee.

Vaughn only acknowledges in his affidavit that he believed that a band or a D.J. to be responsible for licensing fees, although he attests that he gave it little thought. Thus, Vaughn admits that he thought that some entity or person, other than Defendants, might be obliged to pay licensing fees to play copyrighted songs, and his affidavit is silent as to whether he inquired of anyone regarding such a thought. Still, Defendants have not controverted that Plaintiffs have made numerous telephone calls, sent Defendants many letters as well as cease and desist letters to advise Defendants of the need to purchase a license. It is undisputed that BMI never issued a license to any person authorizing the performance at Kenny's Bar & Grill of the works alleged to have been infringed. Considering all the evidence of record, the court finds that an award of statutory damages in the

amount of $30,000 is proper, and represents $2,500 for each infringement. This amount exceeds the applicable licensing fees lost and it nears the general trend of awarding damages of approximately three times the licensing fees. See Cross Keys, 887 F. Supp. at 224. Accordingly, the court finds this award satisfies the compensatory and deterrent goals of the Copyright Act.

**E. Attorney's Fees and Costs:**

Plaintiffs request the court award attorney's fees and costs. Under the fee-shifting provision set forth in 17 U.S.C. § 505, the court, in its discretion, "may allow the recovery of full costs by or against any party." "[T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. See also Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 122 (8th Cir. 1987). When determining if the award of attorney's fees is proper, a court may consider factors such as "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence[.]' [] [C]onsideration of such factors should be 'faithful to the purposes of the Copyright Act.'" Lorimar Music, 2010 WL 3022962, at *7 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 (1994)).

Plaintiffs seek full costs, including their attorney's fees, in the amount of $10,074.04. In support of this request, Plaintiffs have submitted the affidavit of

Attorney Eric M. Walter, who represents Plaintiffs in this matter. Attorney Walter attests that his current hourly rate is $400 an hour which is at or near the prevailing rate; that BMI has a negotiated flat fee arrangement for legal services in connection with this lawsuit, pursuant to which BMI paid a total attorney's fee of $9,500, although significant additional fees were incurred but not billed; that the $9,500 flat fee does not account for fees and costs incurred by BMI's in-house counsel in this matter; and that the costs Plaintiffs have incurred in this litigation, through September 18, 2015, total $574.04. (Doc. 47-10 (Walter Aff.) ¶¶ 6-12).

In response to the amount of attorney's fees and costs which Plaintiffs seek, Defendants question the propriety of such an award and argue that Plaintiffs have used the pleadings Plaintiffs have submitted in this case in other matters, with little modification, and that, therefore, the attorney's fees which Plaintiffs seek are excessive. (Doc. 51-5 (citing Broadcast Music, Inc. v. MWS, LLC, 2012 WL 7760455 (E.D. Mo. Dec. 28, 2012); Broadcast Music, Inc. v. Edcon Enter., LLC, 2012 WL 3070218 (E.D. Mo. Apr. 12, 2012)); Doc. 52 at 4).

The attorney's fees in the amount of $9,500 which Plaintiffs seek account only for the flat fee arrangement Plaintiffs have with Attorney Walter's law firm at the rate of $400 an hour. Considering that additional fees were incurred but not billed, that a fee of $9,500 represents only 23.75 hours of attorney work at $400 an hour, and that BMI's in-house counsel also spent time on this matter in an attempt

to secure a license from Defendants and to collect past due licensing fees and costs, the court finds that Plaintiffs should be awarded $9,500 in attorney's fees, plus costs of $574.04, for a total of $10,074.04. The court will deny Plaintiffs' request for interest on these awards. The court has taken into consideration the fact that the infringement was not large-scale piracy, and Defendants did not enter into a licensing agreement during the pendency of this action.

**V.**
**CONCLUSION**

In conclusion, the court finds that the undisputed facts establish that Defendants violated the Copyright Act, and that, therefore, summary judgment should be granted in Plaintiffs' favor. The court further finds that Plaintiffs should be granted injunctive relief, and that Plaintiffs should be awarded $30,000 in statutory damages and $10,074.04 for attorney's fees and costs.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment is **GRANTED** (Doc. 45), on the issue of Defendants' liability for violations of the Copyright Act, 17 U.S.C. §§ 101 et. seq. and that Plaintiffs are awarded $30,000 in statutory damages ($2,500 for each of the twelve infringements) for which Defendants Ken V Inc., d/b/a Kenny's Bar & Grill, and Ken Vaughn are jointly and severally liable.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded attorney's fees in the amount of $9,500 and costs in the amount of $574.04 for a total award of $10,074.04;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike and Exclude, in part, the Affidavit of Defendant Ken Vaughn is **DENIED** (Doc. 54);

**IT IS FURTHER ORDERED** that Defendants Ken V, Inc., d/b/a Kenny's Bar & Grill, and Ken Vaughn are hereby enjoined from performing Plaintiffs' copyrighted musical compositions, without authorization, at Kenny's Bar & Grill, in violation of the Copyright Act;

and

**IT IS FINALLY ORDERED** that a separate Judgment shall issue incorporating this Memorandum and Order.

Dated this 29th day of January, 2016.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE